IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SSA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-490C |
| v. | ) | (Chief Judge Damich) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

JOINT PRELIMINARY STATUS REPORT

The parties submit this joint preliminary status report pursuant to paragraph III of Appendix A to the Rules of the Court and the Court's May 12, 2005 special procedures order. The paragraph designations below correspond to the paragraph designations in paragraph III of Appendix A.

a. Does the Court have jurisdiction over the action?

The plaintiff believes that the Court possesses jurisdiction to entertain this suit and premises jurisdiction upon the Contract Disputes Act, 41 U.S.C. §§ 601 et seq., and 28 U.S.C. § 1491, as this case involves a Contract Disputes Act claim. Prior to filing the complaint plaintiff considered whether the matter would fall within the exclusive admiralty jurisdiction of the U.S. District Court and concluded that it would not. For a contract claim to fall within admiralty jurisdiction the primary objective of the contract must be essentially maritime in nature. In this case the contract is land based and does not involve any vessel owner or cargo interest. Rather, it is between SSA Marine, Inc. ("SSA")

and the United States Agency for International Development ("USAID"), and provided for SSA to provide services in relation to USAID's redevelopment efforts in Iraq. SSA's activities under the USAID contract may have been tangentially related to maritime commerce and/or preliminary to maritime contracts; however, such indirect activities are traditionally not enough to bring an activity within admiralty jurisdiction.

Defendant has concluded that the Court likely possesses jurisdiction to entertain this suit.

b. Should this case be consolidated with
<u>any other case and the reasons therefor?</u>

At the present time, the parties agree that this case should not be consolidated with any other case.

c. Should trial of liability and damages
<u>be bifurcated and the reasons therefor?</u>

At the present time, the parties agree that the trial of liability and damages should not be bifurcated.

d. Should further proceedings be deferred pending
consideration of another case before this Court
<u>or any other tribunal and the reasons therefor?</u>

At the present time, the parties agree that further proceedings should not be deferred pending consideration of another case before this Court or any other tribunal. The parties are unaware of any basis for transferring or

remanding this case to another tribunal, and the parties are unaware of any related cases in this or any other tribunal.

e. Will a remand or suspension be sought and <u>the reasons therefor and the proposed duration?</u>

At the present time, neither party intends to seek a remand or suspension.

f. Will additional parties be joined and, if so, a statement describing such parties, their relationship to the case, and the efforts to effect <u>joinder and the schedule proposed to effect joinder?</u>

At the present time, neither party intends to join any additional parties.

g. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 and, <u>if so, a schedule for the intended filing?</u>

Plaintiff believes that this case presents a matter of contract interpretation which is a question of law. As such, plaintiff anticipates that some or all issues will be able to be resolved on the basis of summary judgment and considers it likely that such a motion will be filed after the parties complete discovery and pursue settlement, unless the parties settle the case.

At the present time, defendant is uncertain whether it will be possible to resolve this suit upon summary judgment. Although this suit involves contract interpretation issues that are frequently resolvable upon cross-motions for

summary judgment, the parties' discussions to date suggest that there may be a genuine dispute with regard to one or more material facts.

h. What are the relevant factual and legal issues?

The relevant material facts that are not in dispute are:

1. The schedule of the contract contained a provision entitled, "Estimated Costs, Fixed Fee and Obligated Amount" which included the following statement: "(c) CLIN 003 Port Operations - The estimated cost for the performance of the work required hereunder, exclusive of fixed fee is $3,541,480. The fixed fee is $354,148. The estimated cost plus fixed fee is $3,895,628.00." This provision also included the following statement: "The Contractor shall not exceed the aforesaid obligated amount in each CLIN, including any authorized pre-contract award expenses. There is a limitation of funds totaling $2,900,000 under this contract. See the clause entitled Limitation of Funds."

2. SSA's proposal stated that it agreed to the "Financing Port Operations" clause of the contract "based on the following:"

- USAID continues to pay for SSA staff costs
- USAID and SSA mutually agree to a business plan outlining forecasted volumes, revenues and costs to agree on the tariffs and profits.
- If there is a 10% or greater drop off in cargo vs. the mutually agreed to forecasts, then USAID and SSA will renegotiate tariff rates to bring the actual P/L more in line with the originally agreed to business plan numbers.
- SSA is not responsible for capex purchases of any equipment nor will the purchase of any equipment, financed and paid for out of working capital, be required to go against SSA's balance sheet.

3. The contract's statement of work, in optional Contract Line Item Number 003 ("CLIN 003"), provided that plaintiff would potentially operate the Port of Umm Qasr on an emergency basis if ordered to do so by USAID.

4. It was not possible to accurately estimate the total costs for operating the port pursuant to CLIN 003 at the time the parties entered into the contract.

5. CLIN 003 included a provision that addressed financing port operations, which provided as follows:

> Financing Port Operations: In the event that USAID directs the contractor to manage and operate the port, start up funds and working capital to begin implementation of the operation plan shall be provided by USAID. Start up capital shall be provided to cover initial facility and equipment replacement and repair as proposed by the contractor and approved by USAID from the port assessment, improvement plan and operational plan. Start up working capital shall be provided to cover initial operation of the port. After port operations begin, working capital for labor, facilities and equipment operation and maintenance, port overhead and contractor profits shall be obtained from fees and charges to carriers and cargo owners. USAID shall approve the fee and charge schedule and the level of contractor profit from operations. The contractor shall present USAID with monthly financial statements outlining the costs, revenues and profits from operations. The contractor shall maintain separate bank account(s) and records regarding port costs and revenues under this contract. To the extent that revenues exceed costs and negotiated maximum profit margin or level, USAID shall determine the use of any remaining funds in the port operation accounts.

6. USAID directed the contractor to manage and operate the port.

7. With the agreement of the Coalition Provisional Authority ("CPA") and the Iraqi Port Authority ("IPA"), USAID approved the fee and charge schedule (the tariff) to be employed at the port.

8. USAID paid SSA the amounts set forth in the Part I contract schedule, which included a fixed fee of $437,148.

9. USAID declined to approve any level of contractor profit from operations to be paid from port revenues under the Financing Port Operations clause.

10. After port operations began, working capital for labor, facilities and equipment operation and maintenance, port overhead and contractor profits were not permitted by USAID to be obtained from fees and charges to carriers and cargo owners. Port operations were financed up front by SSA and later reimbursed by the United States Government after the parties executed Contract Modification P00002.

The relevant material facts that are in dispute are:[1]

[1] Because many of these issues relate to matters that are internal to SSA, and to which the Government was not privy, the Government will need to take discovery before it will be clear whether some of these factual issues are in dispute between the parties. In addition, the parties do not agree that all of these issues are relevant. Most are only relevant if the plain language of the contract is held not to control. Plaintiff believes that the plain language is dispositive.

1. Whether the interpretation of the contract was discussed and mutually understood during negotiations and at the time of contract formation.

2. How the parties interpreted the solicitation at the time SSA submitted its proposal.

3. How each party interpreted Contract Modifications P00002, P00003, P00004, and P00005, when it executed these bilateral modifications.

4. Whether each party can establish that it relied upon its interpretation of Contract Modifications P00002, P00003, P00004, and P00005, when it executed these bilateral modifications.

5. If the contract was ambiguous and the ambiguity was patent, did SSA inquire to USAID as to the interpretation of the contract and, if so, did USAID resolve the ambiguity?

6. If Contract Modifications P00002, P00003, P00004, and/or P00005 were ambiguous and the ambiguity was patent, did SSA inquire to USAID as to the interpretation of these modifications and, if so, did USAID resolve the ambiguity?

7. Whether Contract Modifications P00002, P00003, P00004, and/or P00005 were executed under duress.

<u>The relevant legal issues that are in dispute are</u>:

The ultimate legal issue is the interpretation of the contract; whether SSA was entitled to a level of profit from port revenues under the Financing Port Operations clause in addition to the fixed fee; and, if so, the amount SSA is entitled to recover. In order to determine the proper interpretation of the contract, the Court will have to decide the following legal issues:

1. Whether the plain language of the contract required the contracting officer to approve a level of contractor profit from operations to be earned from port revenues.

2. Whether the contract was ambiguous.

3. If the contract was ambiguous, whether the ambiguity was patent or latent.

4. Whether bilateral contract modifications P00002, P00003, P00004, and/or P00005 are relevant for determining whether SSA is entitled to a level of profit from port revenues under the Financing Port Operations clause in addition to the fixed fee.

5. If bilateral contract modifications P00002, P00003, P00004, and/or P00005 are relevant for determining whether SSA is entitled to a level of profit from port revenues under the Financing Port Operations clause in addition to the fixed fee, whether these modifications were ambiguous.

6. If bilateral contract modifications P00002, P00003, P00004,

and/or P00005 are ambiguous, whether the ambiguity was patent or latent.

7. Whether the contract provided the contracting officer with discretion with regard to determining whatever profit from port revenues under the Financing Port Operations clause, in addition to the fixed fee, to which SSA might be entitled.

8. Whether the contract established a standard for determining the profit to which SSA might be entitled and, if it does, the standard that was established by the contract.

9. If SSA is entitled to recover, the amount to which SSA is entitled.

i. What is the likelihood of settlement? Is alternative dispute resolution contemplated?

The parties intend to explore settlement, and the use of alternative dispute resolution, once discovery has been completed, and will make every effort to settle this case.

j. Joint Proposed Scheduling Plan

(i) Date For Joinder Of Additional Parties

Any joinder of additional parties shall be completed by October 31, 2005.

(ii) Discovery Plan

(1) The parties have made the disclosures required by RCFC 26(a)(1) and

Appendix A ¶ 3. The parties believe that they can exchange documents by December 30, 2005.

(2) & (3) The parties do not believe that discovery should be conducted in phases or be limited to certain issues. Once discovery has been completed, the parties will attempt to settle this case. If those settlement efforts are not successful, one or both parties may file a motion for summary judgment. The parties anticipate that if one or both of them file such a motion, the motion could be filed within 60 days of the close of discovery, taking into account the time needed to pursue settlement.

(4) The parties propose that fact discovery close on July 28, 2006.

(5) The parties propose that the post-fact discovery status conference be held on one of the following dates:[2]

August 8, 2006 at 10:30 a.m.

August 30, 2006 at 10:30 a.m.

September 1, 2006 at 10:30 a.m.

(6) See our response to (2) & (3), above.

(7) With regard to expert discovery, the Government intends to perform an audit of plaintiff's claim. Plaintiff may have an expert testify in support of

---

[2] Government counsel anticipates that he will be on annual leave August 12-27, 2006.

its claim and/or to respond to the testimony of the Government's auditor. The parties propose that the Government request its audit by October 31, 2005; that the parties disclose the identities of their experts by December 31, 2005; and that expert discovery proceed as follows:

Government expert report due by February 28, 2006

Plaintiff's expert report due by April 28, 2006

Government expert be available to be deposed starting May 1, 2006

Plaintiff's expert be available to be deposed starting June 1, 2006

(8) The parties propose that expert discovery close on July 28, 2006.

(9) The parties do not request relief from the presumptive limits of five depositions and 25 interrogatories that was discussed in the special procedures order, based upon their current knowledge of the case.

(10) The parties do not anticipate requesting any physical or mental examinations.

(11) The parties propose that all discovery close on July 28, 2006.

(12) There are no other matters pertinent to the completion of discovery in this case that the parties need to discuss with the Court.

(iii) Earliest Date This Case Could Be Ready For Trial

The parties believe that the earliest date this case could be ready for trial

would be November 1, 2006, taking into account that the parties will pursue settlement after the close of discovery. This date is based on the assumption neither party files a dispositive motion. If either or both parties file such a motion, that would push back the date of the trial.

(iv) Length Of Time Expected To Try This Case

The parties believe that it will require one week to try this case, including presenting both sides' cases.

(v) Location Of Trial

The parties request that the trial be held in Washington, D.C.

(vi) Other Matters

None.

k. Are there special issues regarding electronic case management needs?

At the present time, the parties are not aware of any special issues regarding electronic case management.

l. Is there other information of which the Court should be aware at this time?

Plaintiff maintains that the following information is relevant: At the conclusion of contract performance, SSA did not receive instructions from USAID as to the disposition of remaining collected funds. As such SSA currently holds money in excess of the amount of the claim in an interest-

bearing escrow account. Counsel for the United States was advised of the existence of such funds shortly after he entered an appearance and before the original due date for the Government's answer.

The parties conducted the early meeting of counsel through several telephone calls and the exchange of several drafts of this JPSR. This process began on September 9, 2005, and was completed on October 11, 2005. The parties have exchanged the lists and other disclosures required by RCFC 26(a)(1) and Appendix A, ¶ 3.

Plaintiff's counsel estimates that this litigation will cost (i) $120,000 through the end of discovery; (ii) $160,000 through the end of trial; and (iii) $210,000 through completion of an appeal, if necessary. Defendant is unable to estimate the costs to the Government of defending this action. Counsel certify that they have provided these estimates to their clients.

The parties propose the following dates for the initial status conference:[3]

October 31, 2005 at 10:30 a.m.

November 1, 2005 at 10:30 a.m.

November 2, 2005 at 10:30 a.m.

[3] Government counsel is scheduled to be out of town the entire week of October 24, 2005, and either the entire week of November 7, 2005, or the entire week of November 14, 2005, taking and defending depositions in another case.

Respectfully submitted,

For plaintiff:

/s/ John W. Butler
JOHN W. BUTLER
Sher & Blackwell, LLP
1850 M Street, N.W., Ste. 900
Washington, D.C. 20036
Tel: (202) 463-2510
Fax: (202) 463-4950

*Counsel of Record for Plaintiff*

Of Counsel:
Heather M. Spring
SHER & BLACKWELL, LLP
1850 M, Street, N.W., Ste. 900
Washington, D.C. 20036
Tel: (202) 463-2516
Fax: (202) 463-4950

For defendant:

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

/s/ Thomas D. Dinackus
THOMAS D. DINACKUS
Trial Attorney
Commercial Litigation Branch

Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530
Tele: (202) 307-6289
Fax: (202) 514-7969

*Attorneys for Defendant*

OF COUNSEL:

JOHN B. ALUMBAUGH
PETER E. YOUNG
U.S. Agency for International Development

Dated: October 11, 2005

NOTICE OF FILING

I hereby certify that on October 11, 2005, a copy of the foregoing "JOINT PRELIMINARY STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John W. Butler