IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SSA MARINE, INC., Plaintiff, v. THE UNITED STATES, Defendant. | Civil Action No. 05-490C (Chief Judge Damich) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to RCFC 56(h), plaintiff SSA Marine, Inc. ("SSA") herein responds to the defendant's proposed findings of uncontroverted fact. (Defendant's proposed findings are restated with plaintiff's response to each following in bold type).

The Contract[1]

1. On or about April 8, 2003, the Government awarded Contract No. TRN-C-00-03-00054-00 ("the contract") to Stevedoring Services of America ("SSA") to perform certain actions with regard to the port of Umm Qasr in Iraq. Compl. ¶¶ 5-7; Def. App. 2, 3, 5.

***Plaintiff agrees that the Contract was executed on or about April 8, 2003. The contract was awarded on April 4, 2003 and was executed with an effective date of March 24, 2003.***

2. Stevedoring Services of America subsequently changed its name to SSA Marine, Inc. ("SSA").

***Plaintiff agrees.***

[1] Plaintiff does not express any agreement or disagreement with defendant's headings and does not express any view as to the materiality of any of defendant's proposed findings.

<u>The Relevant Contract Provisions</u>

3. The contract included the following provision in Section B:

B.2 CONTRACT TYPE AND CONTRACT SERVICES

This is a Cost Reimbursement (CPFF) Level of Effort term contract. For the consideration set forth below, the Contractor shall provide the services, deliverables or outputs described in Section C[Contract Line Items(CLINs) 001, 002 and 003] and F in accordance with the performance standards specified in Section F.

***Plaintiff agrees that the above clause is in the Contract at Section B.1.***

4. The contract also included the following provision in Section B:

B.3 ESTIMATED COST, FIXED FEE, AND OBLIGATED AMOUNT

(a) CLIN 001 Port Assessment - The estimated cost for the performance of the work required hereunder, exclusive of fixed fee is $583,970.The fixed fee is $58,400. The estimated cost plus fixed fee is $642,370.00.

(b) CLIN 002 Port Improvement Implementation Plan - The estimated cost for the performance of the work required hereunder, exclusive of fixed fee is $255,487. The fixed fee is $25,500. The estimated cost plus fixed fee is $280,987.00.

(c) CLIN 003 Port Operations - The estimated cost for the performance of the work required hereunder, exclusive of fixed fee is $3,541,480. The fixed fee is $354,148. The estimated cost plus fixed fee is $3,895,628.00.

(d) Within the estimated cost plus fixed fee specified in paragraphs above, the amount currently obligated and available for reimbursement of allowable costs incurred by the Contractor (and payment of fee) for performance hereunder is:

CLIN 001 $ 642,370
CLIN 002 $ 280,987
CLIN 003 $1,976,643

The Contractor shall not exceed the aforesaid obligated amount in each CLIN, including any authorized pre-contract award expenses. There is a limitation of funds totaling $2,900,000 under this contract. See the clause entitled Limitation of Funds.

***Plaintiff agrees that that the above clause is in the Contract at Section B.3.***

5. The contract also included the following provision in Section B:

Limitation of Funds - This contract is subject to the FAR clause:

52.232-22 LIMITATION OF FUNDS APR 1984

***Plaintiff agrees that the above language is in the Contract at Section B.3.***

6. The contract also included the following provision in Section B:

B.5 INDIRECT COSTS (DEC 1997)

Pending establishment of revised provisional or final indirect cost rates, allowable indirect costs shall be reimbursed on the basis of the following negotiated provisional or predetermined rates and the appropriate bases:

* * *

The government will not be obligated to pay any additional amount should the final indirect cost rates exceed the negotiated ceiling rates, and in the event the final indirect cost rates are less than the negotiated ceiling rates, the negotiated rates will be reduced to conform with the lower rates.

***Plaintiff agrees that the above language is excerpted from Contract Section B.5.***

7. The contract also included the following provision in Section B:

B.6 COST REIMBURSABLE

The U.S. dollar costs allowable shall be limited to reasonable, allocable and necessary costs determined in accordance with FAR 52.216-7, Allowable Cost and Payment, FAR52.216-8, Fixed Fee, if applicable, and AIDAR752.7003, Documentation for Payment. . . .

***Plaintiff agrees that the above language is excerpted from Contract Section B.6.***

8. The contract included the following statement in Section C:

The fundamental objective of this statement of work is to quickly, effectively and safely complete those tasks essential to assess, improve, maintain, and – if necessary – operate Umm Qasr port in support of humanitarian and reconstruction assistance to the people of Iraq. The activity supports USAID and other relief programs and will be carried out through a cost

reimbursement (CPFF), level of effort contract of up to twelve months duration with an option for two extensions of up to one year each.

***Plaintiff agrees that the above language is excerpted from Contract Section C.I.***

9. The contract included the following provision in that portion of the SOW that addressed CLIN 003:

> Financing Port Operations: In the event that USAID directs the contractor to manage and operate the port, start up funds and working capital to begin implementation of the operation plan shall be provided by USAID. Start up capital shall be provided to cover initial facility and equipment replacement and repair as proposed by the contractor and approved by USAID from the port assessment, improvement plan and operational plan. Start up working capital shall be provided to cover initial operation of the port. After port operations begin, working capital for labor, facilities and equipment operation and maintenance, port overhead and contractor profits shall be obtained from fees and charges to carriers and cargo owners. USAID shall approve the fee and charge schedule and the level of contractor profit from operations. The contractor shall present USAID with monthly financial statements outlining the costs, revenues and profits from operations. The contractor shall maintain separate bank account(s) and records regarding port costs and revenues under this contract. To the extent that revenues exceed costs and negotiated maximum profit margin or level, USAID shall determine the use of any remaining funds in the port operation accounts.

***Plaintiff agrees that above clause in contained in the Contract at Section C.III.3.***

10. The contract included the following provision in Section F:

> F.2 LEVEL OF EFFORT
>
> (a) The contractor shall devote the below person-hours level of effort of direct employee, consultant, or subcontractor labor for the period specified in the clause, Period of Performance. This total level of effort is organized by labor category below.
>
> (b) The number of person-hours for any labor category may be used in any other labor category, subject to the prior written approval or direction of the CTO. Once the level of effort has been fully expended, this contract is complete.
>
> (c) The level of effort by labor category for the base period is:
>
> CLIN 001 - For all labor categories 2,880 hours.
>
> CLIN 002 - For all labor categories 1260 hours.

CLIN 003 -

| | |
|---|---|
| Senior Project Manager | 2080 hours |
| Operations Director | 2080 hours |
| Harbor and Terminal Director | 2080 hours |
| 3 Ship Superintendent | 6240 hours |
| Receiving Manager | 2080 hours |
| Delivery Manager | 2080 hours |
| Facilities and Equipment Director | 2080 hours |
| Administration Manager | 2080 hours |
| Safety and Environmental Director | 2080 hours |
| Operations Communications Expert | 2080 hours |
| Total | 24,960 hours |

* * *

***Plaintiff agrees that the above language is excerpted from Contract Section F.2.***

11. The contract included the following provision in Section G:

G.1 AIDAR 752.7003 DOCUMENTATION FOR PAYMENT (NOV 1998)

(a) Claims for reimbursement or payment under this contract must be submitted to the Paying Office indicated in the schedule of this contract. The cognizant technical officer (CTO) is the authorized representative of the Government to approve vouchers under this contract. The Contractor must submit either paper or fax versions of the SF-1034 –Public Voucher for Purchases and Services Other Than Personal. Each voucher shall be identified by the appropriate USAID contract number, in the amount of dollar expenditures made during the period covered.

* * *

(2) The fiscal report shall include the following certification signed by an authorized representative of the Contractor:

The undersigned hereby certifies . . .that . . . appropriate refund to USAID will be made promptly upon request in the event of disallowance of costs not reimbursable under the terms of this contract.

* * *

***Plaintiff agrees that the above language is excerpted from Contract Section G.1.***

12. The contract included the following provision in Section I, "CONTRACT CLAUSES":

I.1 NOTICE LISTING CONTRACT CLAUSES INCORPORATED BY REFERENCE

The following contract clauses pertinent to this section are hereby incorporated by reference . . . .

* * *

| | | |
|---|---|---|
| 52.216-7 | ALLOWABLE COST AND PAYMENT | FEB 2002 |

* * *

| | | |
|---|---|---|
| 52.232-20 | LIMITATION OF COST | APR 1984 |
| 52.232-22 | LIMITATION OF FUNDS | APR 1984 |

* * *

| | | |
|---|---|---|
| 52.243-2 | CHANGES – COST REIMBURSEMENT ALTERNATE IV | AUG 1987 |

***Plaintiff agrees that the above language is excerpted from Contract Section I.1.***

Contract Performance

13. On or about May 21, 2003, USAID exercised CLIN 003. Compl. ¶ 11.

***Plaintiff agrees.***

14. On or about May 23, 2003, control of the port of Umm Qasr was transferred to SSA from the British military. Compl. ¶ 11.

***Plaintiff agrees.***

15. SSA operated the port of Umm Qasr, pursuant to the contract, until approximately June 30, 2004. Def. App. 27.

***Plaintiff agrees that SSA operated the port under the Contract until June 30, 2004.***

Contract Payments

16. During the contract, SSA submitted vouchers to USAID stating the costs SSA had incurred performing the contract. Def. App. 22. USAID reimbursed SSA for the costs it incurred performing the contract, plus fixed fee, as stated in the vouchers. Def. App. 22-23. This process was used to make payments for all the work SSA performed under the contract. Def. App. 23.

***Plaintiff agrees that USAID required SSA to submit vouchers in order to be reimbursed for costs incurred in performing the contract during the entire course of the contract, including after port operations began. Plaintiff agrees that payments were ultimately received in full for all vouchers submitted.***

17. USAID paid SSA a total of $13,302,649.29 pursuant to the contract, which consisted of $12,860,534.81 in allowable costs, $438,048.00 in fixed fee, and $4,066.48 in interest on a late payment. Def. App. 23.

***Plaintiff agrees.***

18. SSA has not submitted a claim or request for equitable adjustment to USAID with regard to the costs it incurred performing the contract. The only claim SSA has submitted to USAID with regard to the contract is the claim that serves as the basis for this suit. Def. App. 25.

***Plaintiff agrees.***

The Claim

19. SSA submitted a certified claim to USAID on or about July 26, 2004. Compl. ¶ 4.

***Plaintiff agrees.***

20. The contracting officer denied SSA's claim on or about November 29, 2004.

Compl. ¶ 4.

***Plaintiff agrees.***

Respectfully submitted,

/s/ John W. Butler
John W. Butler
SHER & BLACKWELL, LLP
1850 M Street, N.W., Suite 900
Washington, D.C. 20036
(202) 463-2510 (tel)
(202) 463-4950 (fax)

Of counsel:

Heather M. Spring
SHER & BLACKWELL, LLP
1850 M Street, N.W., Suite 900
Washington, D.C. 20036
(202) 463-2516 (tel)
(202) 463-4950 (fax)

Dated: November 9, 2006