IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SSA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-490C |
| v. | ) | (Chief Judge Damich) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S
PROPOSED FINDINGS OF UNCONTROVERTED FACT

1. In the fall and winter of 2002, the United States Agency for International Development ("USAID") began working on contingency plans for the reconstruction of Iraq in the event of a U.S military operation in that country. Those plans included reconstruction and/or operation of the port of Umm Qasr. See Pl. App. 29a-32 (Wherry Tr. at 10-13); see also Pl. App. 2 (Abood Tr. at 10).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

2. John Abood, under the supervision of Anne Quinlan, was responsible for drafting the solicitation for reconstruction and operation of the port. See Pl. App. 2 (Abood Tr. at 10-11).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous**

**terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

3. On or about February 12, 2003, USAID issued a request for proposals under Port Solicitation No.TRN-03-009. Pl. App. 39.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

4. The port solicitation, and contract as awarded, divided contract work into three contract line items or "CLINs." CLIN 001 called for the preparation of a port management assessment. CLIN 002 involved planning the implementation of port management improvements. CLIN 003 anticipated the direct operation and management of the port on an as needed basis.

**RESPONSE: Not disputed because this proposed finding is in essential agreement with DPFUF 11.**

5. The solicitation and the contract as awarded included the following clause:

> Financing Port Operations: In the event that USAID directs the contractor to manage and operate the port, start up funds and working capital to begin implementation of the operation plan shall be provided by USAID. Start up capital shall be provided to cover initial facility and equipment replacement and repair as proposed by the contractor and approved by USAID from the port assessment, improvement plan and operational plan. Start up working capital shall be

> provided to cover initial operation of the port. After port operations begin, working capital for labor, facilities and equipment operation and maintenance, port overhead and contractor profits shall be obtained from fees and charges to carriers and cargo owners. USAID shall approve the fee and charge schedule and the level of contractor profit from operations. The contractor shall present USAID with monthly financial statements outlining the costs, revenues and profits from operations. The contractor shall maintain separate bank account(s) and records regarding port costs and revenues under this contract. To the extent that revenues exceed costs and negotiated maximum profit margin or level, USAID shall determine the use of any remaining funds in the port operation accounts.

*See* Joint Preliminary Status Report filed by the parties on October 11, 2005 ("JPSR"), Ex. 3 (Contract Section C.III.3).

**RESPONSE: Not disputed.**

6. Mr. Abood drafted the clause set forth above, referred to herein as the Financing Port Operations clause or FPO clause. *See* Pl. App. 3 (Abood Tr. at 14). Use of the FPO clause was approved by Anne Quinlan (the contracting officer) as well as Ross Wherry (the Director of the Office of Iraq Affairs at USAID). *See* Pl. App. 38 (Wherry Tr., Ex. 1).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

7. During the course of obtaining approval to use the clause, Mr. Abood stated that:

> My recommendation continues to be that we permit these contractors (port and airport) to operate as they do in the commercial world – Charge carriers reasonable fees to raise working capital funds, and profit. Our contract will cover management salaries, per diem, travel, overhead, etc. and initial start-up mobilization and working capital requirements. Given the costs covered by the USAID contract, the fees they charge should be very reasonable.

Pl. App. 15 (Abood Tr., Ex. 7).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

8. At the time the clause was drafted by Mr. Abood he was not aware of any policy to avoid the use of non-appropriated funds to finance Iraq contracts. Pl. App. 8 (Abood Tr. at 55).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

9. At the time the solicitation was drafted, it was not known whether it would be necessary to implement CLIN 003. *See* Pl. App. 3 (Abood Tr. at 14). It was also impossible to estimate the costs that would be associated with operating the

port. *See* JPSR at 6.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

10. During the planning period and prior to award the conditions of the port were unknown to USAID. The Director of the Office of Iraq Affairs at USAID, Ross Wherry, stated that:

> We didn't know what it might look like, and we didn't know what kind of a port would be left. We weren't sure who was to be – if it would be destroyed, if there would be infrastructure left there. We didn't know anything about the labor force. All of the – the details of how one manages a port were opaque to us at that point.

Pl. App. 33 (Wherry Tr. at 45).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

11. John Abood testified that the FPO clause was intended to provide for:

> . . . a more commercially-oriented view of how port operations and capital projects might be financed outside of this particular contract. The clause as a whole describes an effort to derive revenue from an approved tariff schedule and apply that revenue in a

> very commercial sense toward port operations and capital improvement projects. So that instead of the government providing appropriated funds for capital improvement projects, the financing port operation clause described a commercial process through the approval of a tariff, the development of revenues under that tariff and the use of those revenues for port operations and capital improvement projects. So the entire clause, as it's written, has this commercial-type venture as its heart and soul.

Pl. App. 6 (Abood Tr. at 44).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

12. The establishment of a contract for port operations was considered urgent, and there was pressure on USAID to award the port contract. Anne Quinlan testified that: "there was pressure on us from the President of the United States to get the contracts awarded, ultimately." Pl. App. 18 (Quinlan Tr. at 10); *see also* Pl. App. 17-18, 23, 24, 34-35 (Quinlan Tr. at 9-12, Exs. 1 & 2; Wherry Tr. at 48-49).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendants motion for partial summary judgment.**

13. SSA was one of the contractors contacted by USAID about the solicitation. SSA submitted a proposal in response to the solicitation on or about February 19, 2003. USAID determined that SSA was in the competitive range and entered into negotiations with the company.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

14. All negotiations were conducted by John Abood. Anne Quinlan did not engage in any negotiations with SSA and did not review SSA's proposal. Pl. App. 17, 21-22 (Quinlan Tr. at 6-8, 64-67).

**RESPONSE: Disputed. The citations do not support this proposed fact. Also, this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

15. At the time the proposal was submitted it was not possible to estimate all the costs of port operations under CLIN 003. The initial proposal included estimated costs and provided a fixed fee for CLINs 001 and 002 as well as limited items within

CLIN 003. All other items for CLIN 003 were to be estimated in the CLIN 002 Implementation Plan. Pl. App. 43-46.

**RESPONSE: Not disputed.**

16. SSA initially sought to include a significant fixed fee in its proposal so that it would be guaranteed a reasonable profit. SSA had discussions with Mr. Abood about the fixed fee and profit issue. *See* Pl. App. 4-5, 10 (Abood Tr. at 35-38, Ex. 4). Following these discussions, SSA agreed to limit the established fixed fee to 10% of the CLIN 003 limited costs (i.e., man-hour related costs for twelve employees) that could be estimated in advance, with the understanding that SSA would be able to earn profit from port operations under the FPO clause if SSA was directed to operate the port. SSA submitted a revised proposal incorporating these changes.

**RESPONSE: Disputed. The citations only support the proposed finding to the extent that "SSA had discussions with Mr. Abood about the fixed fee and profit issue." Also, even if supported, this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

17. During negotiations, Mr. Abood advised the contracting officer, Anne Quinlan, that "I believe [SSA] might accept the 10%

fixed fee, with the understanding that future profits may be developed through future operations." Pl. App. 11 (Abood Tr., Ex. 6).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

18. The solicitation required offerors to specifically confirm agreement with the CLIN 003 financing mechanism set forth in the FPO Clause. Pl. App. 41.

**RESPONSE: Not disputed.**

19. SSA's proposal stated that it agreed to the "Financing Port Operations" clause of the contract "based on the following:"

> • USAID continues to pay for SSA staff costs
> • USAID and SSA mutually agree to a business plan outlining forecasted volumes, revenues and costs to agree on the tariffs and profits.
> • If there is a 10% or greater drop off in cargo vs. the mutually agreed to forecasts, then USAID and SSA will renegotiate tariff rates to bring the actual P/L more in line with the originally agreed to business plan numbers.
> • SSA is not responsible for capex purchases of any equipment nor will the purchase of any equipment, financed and paid for out of working capital, be required to go against SSA's balance sheet.

Pl. App. 48.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of**

**defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

20. SSA's proposal also stated its understanding that the fixed fee set forth therein was separate from the profit to be earned on port operations:

> SSA is willing to accept this 10% of total project cost profit figure for CLIN 003 provided SSA and USAID can come to a mutual agreement on:
>
> > 1. SSA being able to generate profit from CLIN 003 operations, and
> > 2. the form and or amount of profit SSA can make on operations associated with CLIN 003. (e.g. the form to be either on a per ton handled basis, flat fee or other mutually agreed to form)

Pl. App. 47.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

21. The contract was awarded to SSA on or about April 4, 2003, with an effective date of March 24, 2003. Answer at ¶ 6.

**RESPONSE: Not disputed because this proposed finding is in essential agreement with DPFUF 1.**

22. SSA sent personnel to begin work on CLINs 001 and 002 on or around April 4, 2003. Answer at ¶ 11.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

23. SSA completed the Port Assessment and Implementation Plan as required by CLINs 001 and 002. The Implementation Plan estimated the total amount of costs required to make the port fully operational at $164,832,000. Pl. App. 51-54.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

24. On May 21, 2003, SSA was directed to proceed with CLIN 003 and take over management and operation of the port. Answer at ¶ 11.

**RESPONSE: Not disputed.**

25. With the agreement of the Coalition Provisional Authority ("CPA") and the Iraqi Port Authority ("IPA"), USAID approved the fee and charge schedule (the tariff) to be employed at the port. *See* JPSR at 7.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of**

**defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

26. USAID otherwise failed to implement the FPO clause. USAID did not provide working capital for start up operations, did not permit revenues to be used to fund port operations, and did not approve a level of contractor profit from port operations. JPSR at 7; Answer at ¶ 16.

**RESPONSE: Disputed. The citations do not support the proposed finding. Also, this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

27. SSA requested implementation of the FPO clause on multiple occasions. *See, e.g.,* Pl. App. 55-56, 64, 66-67, 75, 82-83.

**RESPONSE: Disputed. SSA requested additional profit on multiple occasions, but did not ask to undertake responsibility for full commercial operations. <u>See</u> Pl. App. 55-59, in which SSA requests additional profit, while simultaneously asking that the Government pay for additional SSA personnel. Also, this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract.**

**The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

28. At a meeting in Iraq in August of 2003, USAID asked SSA for a proposal for a profit rate under the FPO clause. *See* Pl. App. 50.

**RESPONSE: Disputed. The citation does not support the proposed finding. Pl. App. 50 is a report by a USAID contractor including a statement that "SSA intends to propose a fee structure". No USAID official requested that SSA submit a profit proposal. Also, this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

29. On August 12, 2003, SSA proposed a profit rate of $2.20 per ton of cargo moved through the port. Answer at ¶ 15; *see also* Pl. App. 55-59.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

30. On September 4, 2003, USAID rejected the profit proposal. Pl. App. 78-80.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

31. On September 10, 2003, a meeting was held in Washington, D.C. to discuss implementation of the FPO clause. At the meeting, USAID verbally refused to approve a level of profit under that clause. *See* Pl. App. 26 (Quinlan Tr., Ex. 8).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

32. In December 2003, SSA again reserved its rights to profit under the FPO clause. Pl. App. 81-83. USAID responded that SSA was not entitled to profit from port operations. Pl. App. 84-85.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in**

**defendant's motion for partial summary judgment.**

33. Mr. Abood testified that implementation of the FPO clause was prevented by a USAID policy to avoid the use of non-appropriated funds to finance contract operations in Iraq. Mr. Abood was not aware of any such policy at the time he drafted the clause and Mr. Abood was not aware of any "specific statutes or regulations that might implement such a policy." Pl. App. 8 (Abood Tr. at 55).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

34. Ms. Quinlan testified that:

> Eventually what happened is at the time the contract was awarded and, I guess shortly thereafter, there was this problem throughout Iraq, the issue of spending Iraqi money and that that wasn't really a good idea. The U.S. government changed their position. And so they told us no, we've got to pay out of the USAID's appropriated funds. Because they were already concerned about the issue of being held accountable for managing Iraqi monies, [sic] appropriated monies.

Pl. App. 20 (Quinlan Tr. at 55-56).

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in**

**defendant's motion for partial summary judgment.**

35. The funds that were used for the contract came from the Iraq Relief and Reconstruction Fund provided for by the Supplemental Appropriations Act passed in April of 2003, Pub. L. No. 108-11, 117 Stat. 559 (2003) (Pl. App. 89-91). Pl. App. 36-37 (Wherry Tr. at 66-67).

**RESPONSE: Disputed. The citations do not support the proposed finding. Instead, the contract was initially funded from sources other than Iraq Relief and Reconstruction Fund provided for by the Supplemental Appropriations Act passed in April of 2003. Pl. App. 36-37. Also, this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

36. Instead of implementing the FPO clause, USAID executed modifications to the contract to add appropriated funds. After SSA began operations in Iraq, USAID required SSA to execute those modifications before USAID would reimburse SSA for monies expended by SSA in support of operations. *See, e.g.*, Pl. App. 61.

**RESPONSE: Disputed. The citation does not support the proposed finding. Instead, as Pl. App. 60-61 states, USAID prohibited SSA from incurring any expenses beyond the original contractual limitation of funds until additional funding was**

**obligated to the contract to cover those expenses. Also, this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

37. The modifications did not provide for any fixed fee associated with the appropriated funds added to the contract and did not modify the FPO clause. JPSR Exs. 5 - 8.

**RESPONSE: Not disputed but this proposed fact is irrelevant extrinsic evidence that is not admissible for the purposes of defining the terms of an unambiguous contract. The unambiguous terms of SSA's contract is the issue that is before the Court in defendant's motion for partial summary judgment.**

38. SSA collected $18,742,948.73 in port revenues. $12,807,084.83 of that amount was distributed at USAID's direction to the Development Fund for Iraq. $5,935,863.90, plus accrued interest, remains in a segregated, interest-bearing account established by SSA pending resolution of this litigation. Port revenues exceed the total costs of the SSA/USAID contract by $5,440,299.44. Pl. App. 92-93 (Declaration of Robert Watters at ¶ 14).

**RESPONSE: Not disputed with regard to the amounts specified in this proposed fact. Disputed, however, in that USAID directed**

**SSA to transfer all port revenues to the Development Fund for Iraq, which is an Iraqi Government controlled account, and not to "retain" the funds. SSA has retained possession of the $5,935,863.90 in violation of the contracting officer's order.**

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, DC 20530
Tele: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:

JOHN B. ALUMBAUGH
PETER E. YOUNG
U.S. Agency for International Development

January 5, 2007

NOTICE OF FILING

I hereby certify that on January 5, 2007, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Brian S. Smith