# In the United States Court of Federal Claims

No. 05-490C
(Filed: April 10, 2008)

****************************************
SSA MARINE, INC., *
*
Plaintiff, *
*
v. *
*
THE UNITED STATES, *
*
Defendant. *
*
****************************************

**ORDER**

On July 31, 2007, the Court issued an Opinion granting Defendant's Motion for Partial Summary Judgment. The Court found that the contract at issue in this case ("the Contract") is unambiguous, adopting Defendant's interpretation that the Contract is solely a cost-plus-fixed-fee ("CPFF") contract. Op. at 14. On August 14, 2007, Plaintiff SSA Marine, Inc. filed a Motion for Reconsideration Or, In The Alternative, For Modification Of The Opinion To Permit Interlocutory Appeal. The Court subsequently ordered Plaintiff to file a supplemental brief in support of its motion, which Plaintiff did on December 21, 2007.

In its motion and supplemental brief, Plaintiff makes several arguments attempting to show that the Court erred in its decision on Defendant's Motion for Partial Summary Judgment. To summarize, Plaintiff asserts that (1) the Court was required to, but did not, consider whether the Contract at issue was ambiguous, despite the fact that neither party argued that the Contract was ambiguous, (2) the Court improperly construed disputed facts unfavorably to Plaintiff, the non-moving party, and (3) the Court did not provide sufficient analysis in regard to whether profits under the Contract were required to be capped at ten percent of the fixed fee. Pl.'s Mot. for Recons. at 4, 9, 19.

Plaintiff's arguments are to no avail. The Court finds that Plaintiff has identified no binding authority which states that it is reversible error for a Court to decline to consider ambiguity of a contract where neither party has argued that the contract is ambiguous. In addition, Plaintiff is mistaken in believing that the Court made, and relied upon, findings regarding disputed or controverted facts in rendering its Opinion; the Opinion does not make or rely upon such findings. Moreover, Plaintiff fails to appreciate that determining whether the profits under this CPFF Contract are required to be capped at ten percent would be a pointless exercise. Therefore, the Court DENIES Plaintiff's Motion for Reconsideration. However, to

make strikingly clear to Plaintiff the logic upon which the Court's July 31, 2007 Opinion was based, Plaintiff's arguments will, nonetheless, be addressed below.

## I. *SUA SPONTE* CONSIDERATION OF AMBIGUITY

When filing its response to Defendant's Motion for Partial Summary Judgment, nothing prevented Plaintiff from presenting an argument, even an argument in the alternative, that the Contract is ambiguous. Yet, Plaintiff chose not to do so. *See* Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. at 12-13. Now, after the Court rendered a decision unfavorable to Plaintiff, Plaintiff protests that the Court's decision was made in error because it did not explicitly set forth an analysis of whether the Contract at issue was ambiguous. *See* Pl.'s Mot. for Recons. at 6.

The Court did not explicitly engage in an analysis of ambiguity because neither party argued that the Contract was ambiguous. A rigid rule that would have required the Court to make an ambiguity determination without even knowing the parties' views on ambiguity, would not make sense. However, Plaintiff still maintains that: "If a trial court is faced with opposing plain language readings, it is *obligated* to consider the reasonableness of those readings," and that: "[A] trial court must consider the reasonableness of the parties' interpretations in order to determine whether contract language is ambiguous.... *regardless of whether the parties allege the existence of an ambiguity*." Pl.'s Supp Br. at 4-5 (emphasis added). Plaintiff relies upon *Turner Constr. v. United States*, 367 F.3d 1319 (Fed. Cir. 2004) ("*Turner II*") and *NVT Techs., Inc. v. United States*, 370 F.3d 1153 (Fed. Cir. 2004) ("*NVT II*") for these propositions.[1] In short, Plaintiff believes that the Court should have made an express determination regarding whether the Contract is or is not ambiguous, redundantly to the Court's determination that the Government's interpretation is unambiguously the proper interpretation, and despite the fact that neither party advanced a theory that the Contract was ambiguous. Plaintiff is wrong.

---

[1] Plaintiff also relied upon *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539 (Fed. Cir. 1993) in its Motion for Reconsideration, in arguing that the Court's Opinion improperly chose the Government's interpretation as "the better reading," rather than considering whether both parties' interpretations might be reasonable. Pl.'s Mot. for Recons. at 5. However, *C. Sanchez & Son* was a case in which the Federal Circuit determined that a latent ambiguity existed, based upon arguments the parties presented regarding ambiguity. *C. Sanchez & Son*, 6 F.3d at 1543-44 (Where "the matter in dispute [was] not expressly provided for in the contract," but "the contract was not sufficiently ambiguous or unclear as to place a duty of inquiry on [the contractor]," the contract is latently ambiguous and therefore construed in favor of the contractor, if the contractor's interpretation is reasonable). Thus, the statements from *C. Sanchez & Son* which Plaintiff relies upon do not support Plaintiff's argument because they concern how a court should interpret a disputed contract term only *after* the court has already found the contract to contain a latent ambiguity. *Id.*

**A. Plaintiff's Argument Concerning *Turner Construction Co. v. United States***

According to Plaintiff, "[i]n *Turner* [*II*], the plaintiff plainly took the position that the contract was not ambiguous ... but the [c]ourt nevertheless went on to hold that the contract *was* ambiguous and that [the] plaintiff was entitled to recover on its reading of the contract under the rule of *contra proferent[e]m*." Pl.'s Mot. for Recons. at 6 (quoting *Turner II*, 367 F.3d at 1321). Plaintiff reasons that *Turner II* therefore requires courts to consider whether both parties' interpretations of a contract are within a zone of reasonableness in order to determine if the contract is ambiguous, regardless of whether either party argued that the contract was ambiguous. If both interpretations are relatively reasonable, then the court must treat the contract as ambiguous. Pl.'s Supp. Br. at 4.

In *Turner II*, the Government argued both that the contract specifications at issue were unambiguous and, in the alternative, that the specifications were erroneous and therefore ambiguous. *Id.* at 367 F.3d at 1324. Likewise, the plaintiff also argued, in the alternative, that the contract was ambiguous. *See Turner Constr. Co., Inc. v. United States*, 54 Fed. Cl. 388, 391 (2002) (*"Turner I"*); *Turner II*, 367 F.3d at 1321. Thus, this case cannot be said to support Plaintiff's assertion that courts must consider ambiguity even when no party argues ambiguity, because both parties in *Turner II* presented arguments that the contract was ambiguous.

Furthermore, the court in *Turner II* did not specifically make a finding as to whether the contract was ambiguous. Instead, the court determined that, *if* there were an ambiguity in the contract specifications, such ambiguity was latent. *Id.* at 1324 ("If there indeed were governmental error, it is not apparent from the relevant documents."). The court was then able to make a two-part, alternative holding: either the contract was unambiguous and the plaintiff's interpretation was correct, or the contract was latently ambiguous and should be construed in favor of the plaintiff's reasonable interpretation. *Id.*

Therefore, this case does not support the proposition that a court is "obligated" to make a determination regarding ambiguity when neither party argued that the contract at issue was ambiguous because (1) both parties in *Turner II* argued that the contract was ambiguous and (2) the court in *Turner II* did not make a specific determination as to whether the contract was ambiguous. In fact, one of the alternative holdings in *Turner II* is analogous to the Court's decision here: the contract is unambiguous and one party's interpretation is plainly correct.

**B. Plaintiff's Argument Concerning *NVT Technologies, Inc. v. United States***

*NVT II* was not cited in Plaintiff's original brief in opposition to Defendant's motion for partial summary judgment. Plaintiff first cited *NVT II* in its motion for reconsideration, and first discussed *NVT II* in detail in its supplemental brief. *See* Pl.'s Mot. for Recons. at 7 (string-citing *NVT II*); Pl.'s Supp. Br. at 4-5 (discussing *NVT II* in depth). In Plaintiff's motion for reconsideration, Plaintiff relied chiefly on *Turner II* as support for its argument that a court is obligated to consider whether the contract is ambiguous regardless of whether either party argued

ambiguity. Pl.'s Mot. for Recons. at 6. However, in its supplemental brief, Plaintiff relied primarily on *NVT II* for this proposition. Pl.s' Supp. Br. at 4.

Neither the Court of Federal Claims opinion in *NVT Technologies, Inc. v. United States*, 54 Fed. Cl. 330 (2002) ("*NVT I*") nor the Federal Circuit opinion in *NVT II* specifically reference arguments made by the parties in regard to ambiguity.[2] In fact, *NVT I* appears to proceed on the notion that neither party advanced a theory that the contract was ambiguous. *See NVT I*, 54 Fed.Cl. at 335 ("Both parties argue that the solicitation plainly supports their view. Thus, as a threshold question, the court must first determine whether the solicitation was ambiguous or plainly supports one reading or another").[3] Similarly, in relevant part, the *NVT II* opinion stated that:

> The threshold question in this appeal is whether the solicitation plainly supports only one reading or supports more than one reading and is ambiguous. 'To show an ambiguity, it is not enough that the parties differ in their respective interpretations of a contract term. Rather, both interpretations must fall within a 'zone of reasonableness.'' *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999) (citations omitted). Before this court, each party argues that there is no ambiguity because its respective interpretation of the solicitation is plainly supported, and thus reasonable, while the other party's interpretation is unreasonable.

370 F.3d at 1159.

In *NVT I*, the court specifically found that the contract was unambiguous and that the Government's interpretation was correct. 54 Fed.Cl. at 335. However, the court also chose to give an alternative rationale for judgment in favor of the Government: even if the disputed contract language were ambiguous, the ambiguity was patent, meaning the contract should still be construed in the Government's favor. *Id.* at 335-36 ("*Even assuming that NVT's reading of the provision was reasonable, and there was an ambiguity*, that ambiguity was plain on its face and therefore NVT's reading cannot prevail." (emphasis added)).

Thus, on appeal, the Federal Circuit was presented with two alternative holdings from *NVT I*. This explains the statement in *NVT II*, that "[t]he threshold question in *this* appeal is whether the solicitation plainly supports only one reading or supports more than one reading and is ambiguous." *NVT II*, 370 F.3d at 1159 (emphasis added). The Federal Circuit chose to ground its decision in the second, alternative holding from *NVT I* – that the contract was patently

---

[2] In *NVT I* and *II*, the "contract" at issue was a bid solicitation.

[3] Upon examining the parties' briefing in *NVT I*, on file at the Clerk of Court's office, the Court found that the parties did present arguments, at least in the alternative, regarding whether any ambiguity in the contract would be patent or latent.

ambiguous. 370 F.3d at 1162. Because it was undisputed that the plaintiff did not inquire into such ambiguity, the Federal Circuit construed the contract in favor of the Government. *Id.*

In other words, the Federal Circuit in *NVT II* did make a determination in regard to ambiguity, but the issue of ambiguity was already presented to the Federal Circuit on appeal from *NVT I*. The opinion in *NVT II* thus said nothing as to whether a trial court is "obligated" to make a determination regarding ambiguity, because the court in *NVT I* had voluntarily chosen to do so. At a minimum, *NVT II* cannot be said to support Plaintiff's contention that a trial court errs if it declines to consider contract ambiguity where neither party has presented an argument that the contract is ambiguous.

In sum, Plaintiff's argument that the Court erred by not explicitly making a determination regarding ambiguity, when neither party argued the Contract is ambiguous, is not supported by binding authority.

## II. TREATMENT OF DISPUTED FACTS

Plaintiff also argues that reconsideration is appropriate because the Court improperly construed disputed facts unfavorably to Plaintiff, the non-moving party. Pl.'s Mot. for Recons. at 16. Though Plaintiff is correct that, on summary judgment, courts must construe disputed facts in favor of the non-moving party, the Court's ultimate holding did not rely on any facts which were disputed. *See Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984) (summary judgment appropriate when, "viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in favor of the nonmovant, the moving party was entitled to judgment as a matter of law").

In its Opposition to Defendant's Motion for Partial Summary Judgment, Plaintiff argued that the Contract must be construed to include a separate cost mechanism under the "Financing Port Operations" clause, because it was "impossible" for the parties to estimate costs for CLIN 003 when the Contract was entered into. Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. at 27. Defendant did not dispute Plaintiff's proposed finding of fact that "it was not possible to estimate all the costs of port operations under CLIN 003." Pl.'s Mot. for Recons. at 13-15. However, Defendant had previously stated in the Joint Preliminary Status Report (JPSR) that "it was not possible to *accurately* estimate the total costs for operating the port pursuant to CLIN 003 at the time the parties entered into the contract." *Id.* (emphasis in original).

In the Opinion, the Court examined CLIN 003 of the Contract for its compliance with 41 U.S.C. § 254(b). According to the reasoning of *Fluor Enterprises, Inc. v. United States*, 64 Fed. Cl. 461, 491-95 (2005), § 254(b) requires that CPFF contracts must include an estimation of total costs, so that the permissible "fixed fee" can be determined. Applying that reasoning in its examination of CLIN 003, the Court noted that:

> [I]n *Fluor* it appears that there was no cost estimate *at all* at the time the contract was entered into. *See Fluor*, 64 Fed. Cl. at 468 ("NOAA was unable to estimate the project costs. . . ."). Here, there is clearly an estimate of the cost of port operations pursuant to CLIN 003, namely, $3,541,480. Def.'s App. at 3. Furthermore, Defendant admits that it was impossible to "*accurately* estimate" the total costs; Defendant does not state that it was simply "impossible." In any event, the difference between a CPFF contract with no estimate, as in *Fluor*, and a CPFF contract with clearly a cost estimate (no matter how accurate), as in this case, is enough for this Court to conclude that *Fluor* may be distinguished from this case.

Op. at 12. The Court's finding was simply that the Contract at issue in this case clearly does contain a cost estimate for CLIN 003, so §254(b) is satisfied.[4] Though the Court mentioned the alternatives of considering the costs for CLIN 003 to be "impossible" to estimate or impossible to "accurately" estimate, the Court made no finding as to whether the estimate in the Contract at issue was accurate or not. What is important to the Court's holding, and to §254(b), is that the Contract contained an estimate. This is evidenced by (1) the Court's use of the qualifying introductory phrase: "In any event," immediately after the Court's statement regarding Defendant's admission that it was impossible to "accurately" estimate the total costs, and (2) the Court's use of the parenthetical: "*no matter how accurate*." (Emphasis added.)

Plaintiff is therefore incorrect that the Court's holding improperly relied upon disputed facts construed favorably to Defendant. The disputed fact – whether it was impossible to estimate costs for CLIN 003 or whether it was impossible to "accurately" estimate costs for CLIN 003 – plays no part in the Court's holding. Plaintiff's mischaracterization of the Court's reasoning is not a ground for reconsideration.

## III. CONSIDERATION OF THE 10% PROFIT CAP

Plaintiff's final argument for reconsideration is that the Court erred by failing to fully address one of the parties' disputes. Pl.'s Mot. for Recons. at 19. According to Plaintiff, the Court should have provided a full analysis of Plaintiff's contention that the FAR does not require Plaintiff's profits under the Contract to be capped at 10% of the estimated costs. *Id.*

The Court found that the Contract is *entirely* a CPFF contract. Op. at 14. Thus, Plaintiff's profits under the Contract are "fixed." The fixed amount of profit to which Plaintiff agreed for CLIN 003 is specifically stated in the Contract. In the version of the Contract supplied in Defendant's appendix, the agreed-upon fee happens to be 10% of the estimated cost for CLIN

---

[4] That the Contract contains an estimate for CLIN 003 is plainly evident from the Contract itself. The Court did not have a "need for recourse to extrinsic facts." Pl.'s Mot. at 12. Thus, the Court's determination that the Contract contains an estimate for CLIN 003, is not, and does not rely upon, an "implicit finding of ambiguity." *Id.*

003, or $354,148.[5] Def.'s Mot. for Partial Summ. J. at A5. Whether a higher profit or fee could have been possible under the FAR is strictly an academic question – Plaintiff had contractually agreed to accept a fee of $354,148 and no more.

Once the Court found that the Contract was entirely CPFF, the Court did not need to provide a full analysis on whether the 10% cap would apply, because, regardless of the answer, Plaintiff would not have been contractually entitled to any more than the agreed-upon fixed fee. Simply put, even if the 10% cap did not apply, Plaintiff still contractually agreed to accept a fee equal to 10% of the cost estimate and is not entitled to any more. Thus, Plaintiff is incorrect that the Court erred by not addressing in more detail Plaintiff's arguments concerning the 10% cap.

## IV. CONCLUSION

Plaintiff's Motion for Reconsideration is DENIED. Plaintiff has not established that the Court erred in its interpretation of the Contract. The Court was not *required* to consider ambiguity, did not rely upon disputed facts construed unfavorably to Plaintiff, and did not need to provide detailed analysis of the 10% profit cap issue.

Plaintiff's motion, in the alternative, for the Court to certify the questions presented on summary judgment for interlocutory appeal is also DENIED. In the Court's view, the Opinion on Defendant's Motion for Partial Summary Judgment involves no unsettled controlling question of law. Reaching determinations on the remaining issues will best promote resolution of this case.

Per the Court's Order of August 30, 2007, Defendant's Response to Plaintiff's Motion in Limine to Exclude the Report and Testimony of the Government's Expert Witness is due on or before **May 1, 2008**.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

---

[5] It seems that the parties executed multiple contract modifications after the version of the Contract found in Defendant's appendix, which "simply added money to the contract." Pl.'s Opp'n to Def's Mot. for Partial Summ. J. at 9. It is unclear whether those modifications changed the agreed-upon fixed fee. Regardless, the Court has no reason to believe (and the parties have not indicated otherwise) that the subsequent modifications changed the payment structure of the Contract. Thus, Plaintiff is entitled to the fixed fee that it contractually agreed to, whatever that amount would be after the modifications were executed.